UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1-30-15
```

------------------------------------X

UNITED STATES OF AMERICA,

              Plaintiff,

   - against -

PHILANDER PHILIPPEAUX,

              Defendant.

------------------------------------X

                    13 Cr. 277 (RWS)

                      Opinion

**Sweet, D.J.**

      Defendant Philander Philippeaux ("Philippeaux" or "Defendant") requests that this Court:

      1.   Direct the United States of America (the "Government") to provide a Bill of Particulars pursuant to Rule 7 of the Federal Rules of Criminal Procedure;

      2.   Require the Government to produce confidential informants and confidential witnesses in open court prior to trial, in order to permit Defendant's counsel to ask each such person whether they will speak with Defendant's counsel consistent with United States v. Saa, 859 F.2d 1067 (2d Cir.

1988);

     3.    Exclude all tape-recorded statements of unavailable declarants consistent with the Sixth Amendment of the U.S. Constitution;

     4.    Require the Government to: (a) provide reports from tests, analysis, and examinations; (b) preserve all notes of law enforcement agents from witness interviews; (c) provide the telephone numbers, pen register, or other identifying information for any audio, video, or other recorded conversations that the Government intends to introduce at trial; (d) and produce any warrant, affirmation in support of a warrant, statement in support of any warrant, or any other written document submitted to a Court in seeking a warrant upon which evidence was gather which the Government intends to introduce at trial, pursuant to Rule 16 of the Federal Rules of Criminal Procedure;

     5.    Require the Government to produce certified English transcripts for any Spanish language documents, recordings, or video the Government intends to introduce at trial;

6.   Grant leave for Defendant to move in limine to limit or exclude tape recordings and tape transcripts that the government intends to use at trial; and

7.   Grant leave to file additional motions.

For the reasons set out below, Plaintiff's motion is granted in part and denied in part.

## Prior Proceedings

On April 15, 2013, Defendant was indicted in this District for conspiring to distribute 5 kilograms or more cocaine, from March 2013 to April 2013.  Seal Indictment & Superseding Indictment, United States v. Philippeaux, 13 Cr. 277 (S.D.N.Y. April 3, 2014).  Defendant's original counsel, prior to withdrawing his representation, filed the instant motion on Defendant's behalf on June 23, 2014.

Subsequently, the Government filed another superseding indictment on August 19, 2014, expanding the time frame of the alleged conspiracy as having taken place from January 2012 to April 2013.  See Superseding Indictment, United States v.

3

Philippeaux, 13 Cr. 277 (S.D.N.Y. Aug. 19, 2014).  The
Government's case against the Defendant centers on two
transactions.  Id.

The Government claims that in early 2012, the
Defendant agreed to purchase approximately 14 kilograms of
cocaine from Colombia through a cooperating witness ("CW-1") and
one of the Defendant's co-conspirators ("CC-1"), and that CW-1
received the cocaine shipment in Colombia from other co-
conspirators located in that country.  See Apr. 7, 2014 Tr. of
Removal and Pretrial Detention Hr'g, Pl.'s Mem. in Opp'n, App.
A, ("Removal Hr'g Tr.") at 5.  The Defendant allegedly paid for
a portion of the cocaine through money transfers that he sent
himself and through various associates.  Id.  This is referred
to as the "2012 Transaction."  The Defendant is accused of
having attempted to wire approximately $18,000 from his account
on or about January 30, 2013 in furtherance of the 2012
Transaction.  See Superseding Indictment ¶¶ 4, 8, United States
v. Philippeaux, 13 Cr. 277 (S.D.N.Y. Aug. 19, 2014).

According to the Government, on April 9, 2013, an
undercover DEA informant ("UC-2") picked up a second shipment of
approximately 14 kilograms of cocaine in Colombia, which was
supplied by Jhon Freddy Potes Joris ("Joris") and sent to the

4

Defendant and another co-conspirator, Junior Ventura

("Ventura"), in New York.  Removal Hr'g Tr. at 6.  This is

referred to as the "2013 Transaction."  The Defendant is accused

of having met with the Government's cooperating witness ("CW-3")

in Queens, New York, to discuss the 2013 Transaction on or about

March 15, 2013.  See Superseding Indictment ¶¶ 4, 8, United

States v. Philippeaux, 13 Cr. 277 (S.D.N.Y. Aug. 19, 2014).


     The Government has represented that it has produced

documents, photographs, audio recordings, and video recordings

to the Defendant, consistent with its obligations.  See Pl.'s

Mem. in Opp'n at 4-5.  These materials include:


     a.   Recordings and draft transcripts of recorded

conversations involving the Defendant and his co-conspirators

and concerning the 2012 Transaction and the 2013 Transaction;

     b.   Blackberry Messages ("BBMs") sent by the

Defendant's co-conspirators to an undercover DEA agent ("UC-1");

     c.   Surveillance videos of the deliveries of

narcotics in Colombia for both the 2012 Transaction and the 2013

Transaction;

     d.   Video of the testing of the cocaine delivered in

the 2013 Transaction;

     e.   Wire transfer documentation for wires sent in

connection with the 2012 and 2013 Transactions, including wires
sent by the Defendant;

        f.    Video of CC-1 at a wire transfer business on
January 27, 2012, the same day that the Defendant sent a wire to
CC-1 in connection with the 2012 transaction;

        g.    Evidence seized from Joris's cellphone at the
time of his arrest; and

        h.    Printouts from Facebook.com showing the
Defendant's associations with CC-1 and Ventura on that social
media website.

## The Government Need Not Issue a Bill of Particulars

Rule 7(f) of the Federal Rules of Criminal Procedure
permits a defendant to seek a bill of particulars where needed
to "prepare for trial, to prevent surprise, and to interpose a
plea of double jeopardy should he be prosecuted a second time
for the same offense."  United States v. Bortnovsky, 820 F.2d
572, 574 (2d Cir. 1987).  A bill of particulars may not be used
as a general investigative tool.  United States v. Tranquillo,
606 F. Supp. 2d 370, 382 (S.D.N.Y. 2009) ("Acquisition of
evidentiary details is not the function of the bill of
particulars.") (internal quotations and citations omitted);
United States v. Payden, 613 F. Supp. 800, 816 (S.D.N.Y. 1985)

("It is not enough that the information would be useful to the defendant; if the defendant has been given adequate notice of the charges against him, the government is not required to disclose additional details about its case."); see also, United States v. Guerrerio, 670 F. Supp. 1215, 1224-25 (S.D.N.Y. 1987) (explaining that a bill of particulars "is not a discovery tool and is not intended to allow defendants a preview of the evidence or the theory of the government's case.").  Rather, a bill of particulars is required "only when the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused."  Id. at 1225.

The Government's August 9, 2014 superseding Indictment provides Defendant with adequate notice of the actual overt acts of which he is accused.  The Indictment specifies the date and sum of money the Defendant purportedly wired in furtherance of the 2012 Transaction, as well as the date and location of the alleged meeting to discuss the 2013 Transaction between Defendant and the Government's cooperating witness.  See Superseding Indictment at ¶¶ 4, 8, United States v. Philippeaux, 13 Cr. 277 (S.D.N.Y. Aug. 9, 2014).

Moreover, Defendant has been provided with details about the Government's proof starting from the time of his

arrest.  At the removal and pretrial detention hearing, the case
agent for the investigation testified at length about the
investigation of the Defendant, including about the 2012 and
2013 Transactions, and provided testimony about the cooperating
and other co-conspirator witnesses that the Government had
debriefed, surveillance that the DEA had conducted, and the
specific seizures of narcotics that had taken place in
connection with 2012 and 2013 Transactions.  See generally
Removal Hr'g Tr.

    Lastly, the Government has produced and continues to
produce the documents, videos, and audio recordings that the
Government intends to introduce at trial, which provide
additional information regarding the 2012 and 2013 Transactions
that will be the subject of the Defendant's trial.  See
generally Pl.'s Mem. in Opp'n at 4-5, 18-19.  The production of
these materials provides additional details about the criminal
acts in which the Government contends the defendant engaged and
makes a bill of particulars unnecessary and unwarranted.  See
United States v. Vaughn, 10 Cr. 233, 2010 WL 3025648, at *2
(S.D.N.Y. July 27, 2010) (explaining that "if the information
the defendant seeks is provided in the indictment or in some
acceptable alternate form, such as discovery, no bill of
particulars is required") (internal quotations and citations

8

omitted).

Under these circumstances, the Defendant is not entitled to a bill of particulars.

## The Government Need Not Disclose the Identities of Cooperating Witnesses

The "general and well-established rule is that the Government enjoys a 'privilege to withhold from disclosure the identity of persons [i.e., informants] who furnish information of violations of law to officers charged with enforcement of that law.'" United States v. Shamsideen, No. 03 Cr. 1313, 2004 WL 1179305, at *11 (S.D.N.Y. Mar. 31, 2004) (citing Roviaro v. United States, 353 U.S. 53, 59 (1957), and United States v. Jackson, 345 F.3d 59, 69 (2d Cir. 2003)). This is a substantial government interest.  See Shamsideen, 2004 WL 1179305, at *11.

To overcome this qualified privilege against disclosure, "[t]he defendant bears the burden of showing the need for a disclosure of an informant's identity, and to do so must establish that, absent such disclosure, he will be deprived of his right to a fair trial." United States v. Fields, 113 F.3d 313, 324 (2d Cir. 1997) (internal citations omitted).

Moreover, the Government is not obligated to disclose its
witnesses during pretrial discovery: "Fed. R. Crim. P. 16 does
not require the Government to furnish the names and addresses of
its witnesses in general." United States v. Bejasa, 904 F.2d
137, 139 (2d Cir. 1990).

To meet his burden, the Defendant must do more than
simply show that the informant was a participant in and witness
to the crime charged. United States v. Saa, 859 F.2d 1067, 1073
(2d Cir. 1988) (citing United States v. Jimenez, 789 F.2d 167,
170 (2d Cir. 1986)); United States v. Brunson, 97 Cr. 398, 1998
WL 146271, at *2 (N.D.N.Y. Mar. 26, 1998); United States v.
Castro, 94 Cr. 809, 1995 WL 6235, at *2 (S.D.N.Y. Jan. 6, 1995).
Nor can the Defendant meet his burden by speculating on the
Government's case against the Defendant, or the informant's role
therein. See United States v. Fields, 113 F.3d at 324
("Speculation that disclosure of the informant's identity will
be of assistance is not sufficient to meet the defendant's
burden."). Moreover, a confidential informant's identity need
not be divulged on the basis that the witness's testimony can
"cast doubt on the general credibility of one of the Government
witnesses." United States v. Saa, 859 F.2d at 1073.

Rather, the Defendant must make a specific showing

that "the disclosure of an informant's identity . . . is relevant and helpful to the defense of an accused, or is essential to the fair determination of a cause." Cf. id. (holding that defendant had made requisite showing where NYPD officers gave conflicting testimony on defendant's whereabouts during drug transaction, and informant could have provided additional information on defendant's location during transaction). The Defendant's showing must be substantial enough to overcome the Government's interest in protecting its informant's identity. United States v. Fields, 113 F.3d at 324.

Here, the Defendant offered "three examples" from an "exhaustive list" to demonstrate the necessity of revealing the identity of the unnamed informants. Def.'s Reply Mem. at 4-5. None were adequate to satisfy the Defendant's burden of showing that disclosure of an informant's identity is required to vindicate his right to a fair trial.

The Defendant contends that he is unable to prepare to cross-examine unnamed informants regarding an alleged conversation of which the Defendant was purposefully kept unaware. Def.'s Reply Mem. at 4. The conversation at issue is one in which CC-1 purportedly told CW-1 that the Defendant learned that CW-2 has been arrested and the Defendant no longer

11

wants to deal with CW-1 or CW-2 as a result.  Id.  CC-1

purportedly agreed with CW-1 to keep CW-1 involved without the

Defendant's knowledge.  Id.  The Defendant has not established

how the identity of these informants or their testimony is

material to his defense.  Moreover, the Defendant has not

demonstrated how he will lose his right to a fair trial

considering the reality that Defendant will be able to cross-

examine these informants at trial.  Compare DiBlasio v. Keane,

932 F.2d 1038, 1043 (2d Cir. 1991) (permitting government to

physically produce informant for testimony to address

defendant's need to obtain informant's identity to prove

entrapment defense); United States v. Muyet, 945 F. Supp. 586,

602 n.16 (S.D.N.Y. 1996) (the fact that Government would call

informants to testify at trial, coupled with Government's

production of impeachment material one week prior to testimony

of each witness, allowed "the defendants to conduct a meaningful

defense") and Pl.'s Mem. in Opp'n at 13 (where the Government

represents that it "currently intends to call as a trial witness

the individuals identified above as CW-1, CW-3, as well as other

possible cooperating witnesses.  The Government will produce all

18 U.S.C. § 3500 and impeachment material for these witnesses in

advance of trial").

        The Defendant also contends that no transcript or

12

video is available of the alleged meeting in Queens in
furtherance of the 2013 Transaction, and he must therefore be
allowed to interview CW-3, who was at the meeting along with the
Defendant and Ventura.  See Def.'s Reply Mem. at 4-5.  The
Defendant anticipates that Ventura will testify that the
Defendant was present while the Defendant will deny this, and
contends that the unnamed informant is therefore required to
clarify the "apparent contradiction."  Id. at 5 citing United
States v. Saa, 859 F.2d at 1073.  This is the type of
speculation regarding the Government's case and the substance of
the Government's witness's testimony that is insufficient to
satisfy the Defendant's burden.  Fields, 113 F.3d at 324.  The
Defendant's reliance on United States v. Saa is misplaced.  In
that case, the defendant demonstrated that a conflict existed
between the testimonies of two of the Government's witnesses,
and that the unidentified informant was the only other person
capable of testifying as to which of the Government's two
witnesses was correct.  United States v. Saa, 859 F.2d at 1073-
74.  Here, by contrast, the Defendant was allegedly observed by
law enforcement attending the meeting with Ventura and CW-3.
Any anticipated conflict in testimony is between the Defendant's
version of events and the Government's witnesses' version.  In
short, the Defendant has not met his burden of proving that that
CW-3's identity or testimony is material to his Defense.

Finally, the Defendant contends that the Government referred to post arrest statements by a cooperating witnesses who is no longer cooperating with the Government.  Def.'s Reply Mem. at 5.  The Defendant believes that the fact that the witness is no longer cooperating implies that there exists contradictory testimony that would be undiscoverable unless the Government revealed the identity of the former cooperating witness.  The Defendant's contention is the sort of speculation regarding the possible significance of the informant's testimony to the defense that is insufficient to meet the Defendant's burden.  The Defendant has not explained how a former confidential witness, presumably no longer a witness in this case, could furnish testimony material to his defense.

Having failed to establish the materiality of identity or testimony of the unnamed informants to his defense, the Defendant is not entitled to the requested relief.  His request for in camera questioning of each of the unnamed informants is also denied.

## The Tape-Recorded Statements of Unavailable Declarants are Not Barred by the Confrontation Clause

The Defendant requests that tape-recorded statements

14

of unavailable declarants be excluded under the Sixth
Amendment's Confrontation Clause.

      The Confrontation Clause provides that "in all
criminal prosecutions, the accused shall enjoy the right . . .
to be confronted with the witnesses against him." U.S. Const.
amend. VI. In Crawford v. Washington, the Supreme Court held
that the Confrontation Clause bars "admission of testimonial
statements of a witness who did not appear at trial unless he
was unavailable to testify, and the defendant had had a prior
opportunity for cross-examination." 541 U.S. 36, 53-54 (2004).
The right is limited to "testimonial" statements offered against
the defendant to establish the truth of the matter asserted.
See id. at 59 n.9. A statement is "testimonial" where an
objective evaluation of the circumstances indicates that the
statement was "procured with a primary purpose of creating an
out-of-court substitute for trial testimony." Michigan v.
Bryant, 131 S. Ct. 1143, 1155 (2011). Testimony statements
include "prior testimony at a preliminary hearing, before a
grand jury, or at a former trial; and [] police interrogations,"
Crawford v. Washington, 541 U.S. at 68, or those made in other
situations where "a declarant's knowing responses to structured
questioning in an investigative environment or a courtroom
setting where the declarant would reasonably expect that his or

her responses might be used in future judicial proceedings."
United States v. Saget, 377 F.3d 223, 228 (2d Cir. 2004).

At trial, the Government intends to introduce recorded statements between the Defendant and alleged co-conspirators abroad, and between the Defendant and the cooperating witnesses. Pl.'s Mem. in Opp'n at 15.  Relying on Crawford, the Defendant challenges the admission of these recordings on the ground that the Defendant "has had no opportunity to cross-examine any of the known or unknown declarants."  Def. Mem. in Supp't at 8.

Contrary to the Defendant's contention, the recordings of co-conspirator located abroad are admissible because they are not testimonial in nature, and therefore do not implicate the Confrontation Clause.  That is, these conspirators cannot be said to make statements "under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial."  See United States v. Burden, 600 F.3d 204, 224 (2d Cir. 2010) (holding that "there is . . . no Confrontation Clause problem with respect to the statements on the [surreptitious] recording by anyone" unaware that the recording was being made); United States v. Williams, 506 F.3d 151, 155-57 (2d Cir. 2007) (codefendant's statements to non-law enforcement witnesses implicating himself and the

16

defendant in shootings were non-testimonial and therefore
presented no issue under the Confrontation Clause).

The recordings of the Defendant's conversations with
confidential informants may also be non-testimonial, though a
final determination requires examination of the actual
statements in question.  In United States v. Burden, the Second
Circuit held that the cooperating witness's "statements on [a]
body wire recording are not within the 'core class of
testimonial statements' described in Crawford, even when one
accounts for [the cooperating witness's] knowledge that his
statements could be used at a later trial."  600 F.3d at 225
("[E]ven to the extent that [the confidential witness] knew his
statements could be used at a future trial, this is not a case
in which anything [the confidential witness] said was spoken for
the purpose of accusing.  Rather, his comments were made to
elicit inculpating statements by others present.").  However,
"no court can say whether a particular kind of statement is
testimonial until it has considered that kind of statement in an
actual case."  Id. at 224.  Therefore, a final determination on
this issue is impossible without the actual statements at issue.
The Defendant may file subsequent motions in limine identifying
which statements he contends are testimonial and therefore
covered by the Confrontation Clause.  None are barred based on

17

the Defendant's current motion.

## Judicial Intervention with Respect to the Defendant's Remaining Requests is Premature

As itemized in greater detail above, the Defendant is requesting that this Court require the Government be required to: provide reports from tests, analysis, and examinations; preserve interview notes; provide the telephone numbers, pen register, or other identifying information for any audio, video, or other recorded conversations that the government intends to introduce at trial; provide copies of warrants and documents upon which warrants were issued; and supply the Defendant with English translations of Spanish-language documents and recordings.

The Court declines to intervene on the basis of the Government's representations that it is "endeavoring to provide the defense with the requested items to the extent they exist and have not already been provided to the defense."  Pl.'s Mem. in Opp'n at 18.

The Defendant is free to make another application should he find that the Government has failed to adhere to these

representations.

## Conclusion

For the reasons set forth above, the Defendant's
motion is denied in part and granted in part.


It is so ordered.


New York, NY
January 3 0 , 2015

ROBERT W. SWEET
U.S.D.J.

19