```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA

            v.                         13 Cr. 277 (RWS)

PHILANDER PHILIPPEAUX,
                                       Conference
                 Defendant.

------------------------------x

                                       New York, N.Y.
                                       June 9, 2014
                                       2:30 p.m.

Before:

        HON. ROBERT W. SWEET

                                       District Judge


            APPEARANCES


PREET BHARARA
     United States Attorney for the
     Southern District of New York
RAHUL MUKHI
     Assistant United States Attorney


BENJAMIN WEISENBERG
CONOR MCNAMARA
     Attorneys for Defendant


LAUREN BLACKFORD
     Pretrial services Officer
```

1             (Case called)
2             THE CLERK:  Government, are you ready?
3             MR. MUKHI:  Yes, your Honor.  Rahul Mukhi for the
4    United States.  With me is pretrial services Officer Lauren
5    Blackford.  Good afternoon.  I also wanted to apologize for
6    being late.
7             THE COURT:  Quite all right.  I understand.  No
8    problem.
9             THE CLERK:  Defendant ready?
10            MR. WEISENBERG:  Yes, your Honor.
11            THE COURT:  Folks, I want to thank you all very much
12   for coming in.  I know we had a conference set on the 10th, but
13   my schedule got a little out of control.  So I appreciate very
14   much your coming in today instead.
15            I take it our first order of business is to set a
16   trial date.  What do you want?
17            MR. WEISENBERG:  Your Honor, if I may be heard on this
18   issue?
19            THE COURT:  Sure.
20            MR. WEISENBERG:  After meeting with my client today
21   and having a more detailed conversation after subsequent
22   discovery that was received this weekend, specifically, the
23   transcripts from the removal and pretrial detention hearing in
24   Florida, at this time we would be willing to waive Speedy Trial
25   Act rights if the government and the Court would still wish to

1   set this for another preliminary conference.
2              THE COURT:  That's good.  Let me ask the government,
3   it is a wheel C case, will you say about two weeks?  What do
4   you think?
5              MR. MUKHI:  It is going to be less.  There was another
6   defendant.
7              THE COURT:  That's fine.  Let's set it down for the
8   15th of September, if that is agreeable to everybody.
9              MR. MUKHI:  If it is agreeable to the defense, yes.
10             THE COURT:  Mr. Weisenberg is looking at his calendar
11  because he has many important commitments.
12             MR. WEISENBERG:  That will be fine with us as well,
13  your Honor.
14             THE COURT:  It's OK?
15             MR. WEISENBERG:  Yes, your Honor.
16             THE COURT:  I understand also you would like to make a
17  bail application.
18             MR. WEISENBERG:  That's correct, your Honor.
19             THE COURT:  Pleased to hear you.
20             MR. WEISENBERG:  Your Honor, at this time we move the
21  Court to set bail.  We ask the Court for $250,000 surety bond
22  from the family.  The family is willing to put up a home, has a
23  co-signer who will be willing to put up a home to be sure that
24  he returns.  Today we have, as previously noted at his
25  detention hearing in Florida, his passport to surrender to the

1  Court to give this Court more confidence that he will not be
2  fleeing the United States and will return for all hearings that
3  will be set by this Court.
4      I would like to take some time to address, if we can,
5  the detention hearing that was heard in Florida.  At the
6  detention hearing the testimony given by the DEA agent was,
7  while lengthy, very superficial.  We have gone through the
8  discovery from the government.  There is alleged to be a few,
9  wouldn't say several, I'd say a few telephone conversations
10 that are alleged to be of my client.
11     No actual identifying information beyond just the
12 recordings themselves were provided.  There is no pen register,
13 there is no information as to what cell phone numbers were used
14 or anything that can be linked directly to my client.  There is
15 no surveillance evidence of my client meeting with an
16 undercover agent.  What was turned over to us are two videos of
17 other persons.  One is in a foreign jurisdiction, Colombia, and
18 one appears to be a parking garage.
19     Unfortunately, your Honor, in this case the vast
20 majority of what was turned over is in the Spanish language.
21 It was turned over without certified English translations.
22 While we did receive over 20 CDs worth of phone conversations
23 and we are working our way through it, it's in Spanish, and
24 there is really only so much of it we can get through without
25 certified English translations.

1        In this detention hearing in Florida they indicated
2   that my client had been on the run for a year.  I don't believe
3   that is a fair assessment of what happened.  Mr. Philippeaux
4   was living an open and notorious life in Florida.  He lived
5   with his wife and his children.  While he did not have steady
6   employment, he was living open and notoriously.
7        The government claims that he was on notice of a
8   warrant for his arrest because of law enforcement interaction
9   with someone else, not with him.  Mr. Philander had no notice.
10  He did not know that a warrant was out for his arrest.  He
11  contacted an attorney and asked the attorney to look into his
12  status, if there was someone out to get him once he heard from
13  someone, from someone, that one was looking for him.  The
14  attorney told him there was nothing outstanding against him.
15       There is nothing in the people's case so far in
16  discovery that indicates he is a danger to the community or a
17  flight risk.  From what we can review, most of this is hearsay
18  or from unidentified persons.  There is no actual surveillance
19  information of my client committing any crimes.  And he was in
20  Florida, we are here in New York State.
21       I think the Court can be more than assured that he
22  will return to every court case.  I don't believe that there is
23  any past criminal history that the government has submitted
24  that indicates he would flee from court cases or be a danger to
25  anyone's life.  I don't believe the government's evidence is

1   sufficient for us to fail to rise to overcome the presumption
2   in a case like this.
3            There is no reason why he cannot be granted a bail
4   with a significant amount of money the court holds on to as
5   well as holding on to his passport that will ensure Mr.
6   Philippeaux will return to any future court dates and not be
7   dangerous to his community.
8            THE COURT:  Tell me what you propose with respect to
9   property.
10           MR. WEISENBERG:  There is a house that not a family
11  member's but that a friend of the family is willing to put up
12  that would be over the $250,000 limit.  I do have a member of
13  his family.  His sister Eve, is here in the courtroom today.
14  She can testify to this and any other assurances the family can
15  give.  They are here to do so.
16           THE COURT:  Thank you very much.
17           Anything from the government?
18           MR. MUKHI:  Yes, your Honor.  The government seeks
19  continued detention in this case primarily based on risk of
20  flight.  This is a presumption case, so detention is
21  appropriate unless the defense can overcome it, which the
22  government doesn't believe it has in this case.
23           First of all, the defendant was indicted over a year
24  ago now and was apprehended about a year later.  There were
25  efforts made to locate him at the time or around the time that

1   the warrant originally had issued, and they were unsuccessful
2   up until earlier this year.  The only reason he was apprehended
3   is he was picked up on an unrelated arrest, apparently, by the
4   state police.  The warrant immediately hit, and he was taken
5   into federal custody down in Florida.
6           In Florida, as is his right, but I think it goes to
7   risk of flight here, Mr. Philippeaux disputed identity.  That's
8   the reason we have the whole transcript of that hearing.  Not
9   only was it a detention hearing, it was an identity hearing
10  where Mr. Philippeaux was claiming that we had indicted a
11  different Philander Philippeaux and he was not the person named
12  in the indictment.
13          I think that goes to risk of flight given that he was
14  willing to dispute even his identity, which I think the DEA
15  agent testimony put to rest fairly quickly.  That evidence
16  includes surveillance even though the defense said there was no
17  surveillance evidence.  He is referring I believe maybe to
18  video footage.  There is no video.
19          But there was a DEA agent, at least one DEA agent, who
20  observed this defendant attend a narcotics transaction meeting
21  at a McDonald's near JFK Airport.  That was earlier in 2013.
22  That is a meeting where a cooperating witness would be expected
23  to testify that Mr. Philippeaux attended along with a
24  co-conspirator Junior Ventura to negotiate the transportation
25  of up to 15 kilograms of cocaine from Colombia.  Mr.

1   Philippeaux participated in that meeting and the transaction
2   was successful.  A few weeks later, approximately 14 kilograms,
3   I believe, was transported from Colombia to New York.
4               In addition, during the conspiracy Mr. Philippeaux
5   traveled down to Bogota, Colombia, to participate in the
6   negotiations with the Colombian source of supply.  There are
7   two transactions at issue here, and I believe during both he
8   traveled down there.  One was in 2013 and one was 2012.  The
9   2012 one right now is outside of the time frame charged in the
10  conspiracy, but we anticipate superseding to expand that time
11  frame.
12              This conspiracy involved connections to outside of the
13  United States.  Mr. Philippeaux is not a United States citizen.
14  I believe counsel may have his passport in court today.  He
15  previously told pretrial services here that his passport was
16  expired and lost, although now apparently it is in the
17  courtroom.  That obviously raises a concern why they were not
18  forthcoming about the status of his passport.
19              In addition, just the nature of these charges does
20  raise a flight risk because there are connections outside of
21  the United States.  In addition to Colombia, there are
22  co-conspirators, at least one, believed to be located in the
23  Dominican Republic.  That is another connection.
24              Given all else that is in the pretrial services
25  report, which includes several prior arrests, I don't believe

1    any of them resulted in conviction, but there are at least a
2    couple of charges that raise some concern.  There is a charge
3    from 1997, albeit many years ago, but it was a destroying
4    evidence charge.  That raises a concern with respect to bail.
5    The most recent arrest, which I believe there were arrests in
6    Coral Springs, led to an arrest and taking into federal custody
7    for attempt to obstruct justice.
8        I think the defendant's history and connections to
9    outside the United States, as well as the nature of the charges
10   and the presumption in this case, all support an order of
11   detention.  Thank you, your Honor.
12       THE COURT:  Anything further, Mr. Weisenberg?
13       MR. WEISENBERG:  Yes, your Honor.  I would like to
14   begin with the unrelated law enforcement issue that resulted in
15   him coming in contact with a traffic stop.  He ran a stop sign.
16   That really is not something that raises a danger or risk to
17   the community.  He came in contact with a law enforcement
18   officer while driving on his valid license.  He ran a stop sign
19   and had a interaction with a law enforcement officer.
20       I don't believe it is appropriate for the government
21   to rest a bail application on crimes for which he was not
22   convicted.  That is the purpose of the presumption of innocence
23   before being proven guilty.  None of those arrests resulted in
24   convictions.
25       Counsel may be able to point us to a part of the

1  transcript that I did not see, but I have reviewed the
2  transcript in detail.  At no time were there outstanding
3  questions where he disputed his identity.  I think it is more
4  appropriate to say it was an identity hearing to ensure this
5  person in Florida, the person who was arrested, was the same
6  Philander Philippeaux who had an open case against him in New
7  York.  He wasn't there claiming he wasn't who he was.  The
8  court was doing an appropriate due diligence to make sure that
9  he was the correct person who the government was trying to
10 remove from Florida to New York.
11         He is a green card holder.  He is not here unlawfully
12 in the United States.  He has been a green card holder for
13 nearly his entire life.  He arrived in the United States as a
14 young child and he has been here on a valid green card since
15 then.  We have his passport.  The passport was lost.  Since his
16 detention, the passport was found in a storage facility by
17 family members in Florida and brought to us in New York.  It
18 wasn't like he had it in his house and just didn't have it with
19 him.  It was in a storage locker that the family searched and
20 found.
21         The government is making many references to this
22 ongoing conspiracy, these people from outside the foreign
23 jurisdiction.  All of this, so far as we can see, your Honor,
24 is based on a few phonecalls that are allegedly of my client.
25 There is no video evidence of him committing any crimes so far

1   that was testified to in the detention hearing, as far as I can

2   understand the transcript.  Obviously, the transcript is not

3   being there live.  I don't believe this DEA witness is the one

4   who witnessed him in the McDonald's, if allegedly he was there.

5          I don't believe that the government's case is so

6   strong for us not to be able to overcome the presumption in

7   this case, with both putting up family sureties and a house as

8   well as turning over the passport and pointing to his record

9   that there are no convictions that should give pause to this

10  Court as a danger to the community or risk of flight.

11         THE COURT:  At this point I'm going to deny bail.  The

12  problem I have is the substantiality of any property or any

13  material sacrifice that would be involved in the event that Mr.

14  Philippeaux did not appear.  It would have to be not just a

15  friend of the family, but it would have to be something

16  substantial and it would have to be directly family connected.

17  In the absence of that, I don't think that the presumption is

18  overcome.  If the situation should change, I would be perfectly

19  prepared to review my conclusion.

20         Is there anything further?

21         MR. MUKHI:  Your Honor, the government would move to

22  exclude time under the Speedy Trial Act between today and the

23  day of trial, September 15th.

24         THE COURT:  OK, I'll do that.  Thank you.  Anything

25  further?

1                MR. WEISENBERG:  Yes, your Honor.  I believe that we
2    had filed a notice of motion.  I'm sure counsel may need some
3    time to prepare.  As the Court mentioned, this was moved up.
4    There were some issues in regards to a conversation about a
5    bill of particulars that counsel and I had.
6                THE COURT:  That's fine.  Do you all want to set a
7    schedule now?  I'll take that motion on submission at any time
8    that is convenient for counsel.
9                MR. MUKHI:  May we have a moment, your Honor?
10               THE COURT:  Sure.  What did you decide?
11               MR. MUKHI:  Your Honor, if the government could have
12   three weeks to respond.
13               THE COURT:  The motion had been made?  You got it?
14               MR. MUKHI:  Yes.  It was filed this morning.
15               THE COURT:  Respond in three weeks.  The government's
16   response would be July 7.  And then let's have a week, how is
17   that, for any possible reply?
18               MR. WEISENBERG:  That's fine, your Honor. One week is
19   fine.
20               THE COURT:  July 7, the reply July 14.  If there is
21   anything else, submit it on July 16.
22               Anything else?
23               MR. WEISENBERG:  No, your Honor.
24               MR. MUKHI:  Is it your Honor's practice to set an in
25   limine motion schedule?

1             THE COURT:  Complete any in limine motions on the 8th
2    of September.  If necessary, we will hear them on the 11th or
3    12th, depending, of September.
4             MR. MUKHI:  Thank you, your Honor.  As far as requests
5    to charge, would that also be on the 8th?
6             THE COURT:  Yes, the requests to charge on the 8th.
7             MR. MUKHI:  Thank you, your Honor.
8             THE COURT:  Anything else?
9             MR. WEISENBERG:   No, your Honor.
10            MR. MUKHI:  No, your Honor.
11            THE COURT:  Thank you all.
12            (Adjourned)
13
14
15
16
17
18
19
20
21
22
23
24
25