UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------X

UNITED STATES,

                     Plaintiff,

     - against -

PHILANDER PHILLIPEAUX,

                    Defendant.

----------------------------------------X

13 Cr. 277 (RWS)

OPINION

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1-12-16

A P P E A R A N C E S:

Attorney for Plaintiff

UNITED STATES ATTORNEY OFFICE, SDNY
One Saint Andrew's Plaza
New York, NY 10007
By:   Katherine Reilly, Esq.
       Sidharda Kamaraju, Esq.

Attorneys for Defendant

LAW OFFICE OF JOYCE C. LONDON
59 Maiden Lane, Sixth Floor
New York, NY 10038
By: Joyce C. London, Esq.

LAW OFFICES OF CHRISTOPHER MADIOU
233 Broadway, Suite 2208
New York, NY 10279
By: Christopher P. Madiou, Esq.

**Sweet, D.J.**

Defendant Philander Phillippeaux ("Defendant" or "Phillippeaux") moves pursuant to Federal Rule of Criminal Procedure 29(c) for a judgment of acquittal as to both Counts One and Two of the indictment against him, and a conditional ruling for a new trial pursuant to Federal Rules of Criminal Procedure 29(d)(1) and 33. For the reasons set forth below, the motions are denied.

**Prior Proceedings**

Defendant was indicted on April 3, 2014 for conspiracy to possess and distribute five kilograms and more of cocaine, and conspiracy to import into the United States from a place outside thereof of five kilograms oo more of cocaine. Trial began on September 15, 2015. At the close of the Government's case, Defendant moved for a judgment of acquittal, which was denied. On September 23, 2015, the jury found Phillippeaux guilty on both counts. Subsequent to the return of the verdict, Defendant made an oral Rule 29(c) motion, supplemented by letter on October 21, 2015.

The letter motion submits that the trial record is

2

insufficient to sustain the verdict because proof of guilt was premised entirely on the testimony of cooperating witnesses, confidential sources, and law enforcement agents. In short, Defendant argues that the testimony of his co-conspirator Mimi Montilla was fraudulent and induced solely by the opportunity to reduce her sentence and that of her son by cooperating with the government, that the evidence of Montilla's son Dionisio's phone call with Phillippeaux was primed by law enforcement agents who (prior to the call) informed Dionisio that Phillippeaux would be on the phone), and that the testimony of Jose Fortuna as fraudulent and induced by an opportunity to obtain leniency and maintain residency in the United States.

On November 10, the Court extended the briefing schedule for 30 days to provide Defendant an opportunity to seek new counsel if he so chose. On December 4, 2015, Defendant informed the Court by letter that he would retain his trial counsel for purposes of the instant motion, and requested to rely on the papers. The Government was likewise prepared to rely on the papers. The motion was heard on submission and deemed fully submitted on December 4, 2015.

3

**The Evidence at Trial**

The government's case was based on the testimony of seven witnesses and some 200 exhibits supporting a conclusion that on two separate occasions in 2012 and 2013, Defendant conspired with others to purchase and import five kilograms or more of cocaine from Columbia to the United States.

The 2012 Deal was evidenced by the testimony of Mimi Montilla ("Montilla"), Defendant's co-conspirator and then-girlfriend. Montilla testified that she and Phillippeaux were approached by Judy Gonzalez ("Gonzalez") about a scheme to purchase cocaine and transport it to New York. Tr. at 192-93, 203-05; GX 200-1, 200-1T. She testified to numerous ongoing aspects of this deal, including in-person meetings with Defendant, telephone calls, and the wiring of money, all related to the scheme to purchase and import cocaine. Tr. 191-300. Montilla's son, Dionisio Cabrera Montilla, testified to a February 2012 phone call with Defendant to discuss distribution of the cocaine in New York. Tr. 308-20, 365-67. Two Special Agents of the Drug Enforcement Administration, Sean Wulff and William Chamulak, testified to the investigation of the deal over time and the ultimate interception of fourteen kilograms of cocaine purchased in furtherance of the conspiracy.  Tr. 25-137,

4

138-188. The government introduced lawfully recorded telephone
calls and translations between Defendant and Gonzalez, Defendant
and Montilla, and Defendant and Dionisio Montilla discussing
various elements of execution of the conspiracy in vague terms.
See e.g., GX 2003, 800-2T, 800-3T, 800-6T, 600-7T, 800-8T, 801-
3T, 801-4T, 801-5T, 801-7T. Veiled email correspondence between
Defendant and Gonzalez was introduced showing the pricing and
quantity of cocaine to be purchased. GX 322, 323, 328, 330, 333.
Video recordings showed Montilla and Gonzalez receiving wire
transfers and the cocaine delivery in Colombia. GX 900, GX 901-
1. A sample of the cocaine was introduced. GX 1. Bank and wire
records were introduced evidencing the monetary transactions. GX
400-5, 1000, 10001. Airline records corroborated Defendant's
travel to Columbia and other points relevant to the conspiracy.
GX 500-10, 500-11.

   With respect to the 2013 Deal, Montilla testified to her
cooperation with an undercover Drug Enforcement Administration
agent. Tr. 251-54. Another cooperating witness, Jose Fortuna
("Fortuna"), testified to having met with Defendant and another
co-conspirator, Jose Ventura ("Ventura"), to discuss the cocaine
purchase and importation in to the United States. Tr. 374-79.
Special Agent Wulff and another Drug Enforcement Administration
Agent, Christian McNeil, testified to surveilling the meeting

5

and identifying Defendant. Tr. 78-82, 401-06. Special Agent
Chamulak testified to the interception of the cocaine in
Columbia. Tr. 169-72. Fortuna testified to delivery of the
cocaine, Special Agent Wulff to oversight of the operation, and
to the arrest of Ventura. Tr. 379-80, Tyr. 88-91. Text messages
between Ventura and one "Felipe" were retrieved and corroborated
by Investigator Reginald Donaldson. Tr. 415-24. The Government
also supplied substantial documentary evidence of the 2013 deal,
including recorded calls between Montilla and Gonzalez regarding
the meeting with the undercover agent (GX 801-8T) and between
the agent and Ventura to arrange the meeting between Defendant,
Fortuna, and Ventura, email and flight records (GX 362, 365,
370, 372, 500-1, 500-2, 501-2), and bank and travel records (GX
400-1, 502-1).

Defendant's evidence consisted only of his own testimony.
Defendant testified that he did not engage in drug trafficking,
but that all transactions revolved around his clothing business
with Gonzalez. See e.g. Tr. 444-47. Defendant testified travel
to Columbia was for personal and legitimate business purposes.
Tr. 448, 457-58. Defendant disclaimed that the recordings
captured his voice, or that any reference to
"Felipe"/"Phillippe" was to him. Tr. 447, 505-07. Defendant
contradicted the testimony of the Special Agents that he was

6

present at the meeting with Ventura and Fortuna. Tr. 509-10.

## Applicable Standard

Federal Rule of Criminal Procedure 29(c) provides that a court may set aside a jury verdict and enter a judgment of acquittal when "the evidence is insufficient to sustain a conviction." A defendant challenging the sufficiency of the evidence supporting his conviction "'bears a heavy burden.'" United States v. Jackson, 335 F.3d 170, 180 (2d Cir. 2003) (quoting United States v. Finley, 245 F.3d 199, 202 (2d Cir. 2001)). In reviewing the sufficiency of the evidence, the court "view[s] the evidence presented in the light most favorable to the government and draw[s] all reasonable inferences in the government's favor." United States v. Autuori, 212 F.3d 105, 114 (2d Cir. 2000). In addition, evidence must be considered "in its totality, not in isolation," id., and the Court will "'defer to the jury's determination of the weight of the evidence and the credibility of the witnesses, and to the jury's choice of the competing inferences that can be drawn from the evidence.'" United States v. Dhinsa, 243 F.3d 635, 648 (2d Cir. 2001) (quoting United States v. Morrison, 153 F.3d 34, 49 (2d Cir. 1998)). The jury verdict must be upheld if "any rational trier of fact could have found the essential elements of the crime

7

beyond a reasonable doubt.' " Dhinsa, 243 F.3d at 649 (quoting

Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61

L.Ed.2d 560 (1979)); see also United States v. Cassese, 428 F.3d

92, 98 (2d Cir. 2005). "In cases of conspiracy, deference to the

jury's findings 'is especially important ... because a

conspiracy by its very nature is a secretive operation, and it

is a rare case where all aspects of a conspiracy can be laid

bare in court with the precision of a surgeon's scalpel.' "

United States v. Snow, 462 F.3d 55, 68 (2d Cir. 2006) (citing

United States v. Morgan, 385 F.3d 196, 204 (2d Cir. 2004);

United States v. Mulder, 273 F.3d 91, 109 (2d Cir.2001)).


Federal Rule of Criminal Procedure 33 states that a court

may grant a defendant's request for a new trial "if the interest

of justice so requires." A district court "has broader

discretion to grant a new trial under Rule 33 than to grant a

motion for acquittal under Rule 29, but it nonetheless must

exercise the Rule 33 authority 'sparingly' and only in 'the most

extraordinary circumstances.'" United States v. Ferguson, 246

F.3d 129, 134 (2d Cir. 2001) (quoting United States v. Sanchez,

969 F.2d 1409, 1414 (2d Cir. 1992)); United States v. Triumph

Capital Grp., Inc., 544 F.3d 149, 159 (2d Cir. 2008). Because

the courts generally must defer to the jury's resolution of

conflicting evidence and assessment of witness credibility,

8

"[i]t is only where exceptional circumstances can be
demonstrated that the trial judge may intrude upon the jury
function of credibility assessment." Sanchez, 969 F.2d at 1414.
"The ultimate test on a Rule 33 motion is whether letting a
guilty verdict stand would be manifest injustice.... There must
be a real concern that an innocent person may have been
convicted." Ferguson, 246 F.3d at 134. The trial court must be
satisfied that "competent, satisfactory and sufficient evidence"
in the record supports the jury verdict. Sanchez, 969 F.2d at
1414.


**Defendant's Motion is Denied**


Defendant's argument is two-fold: First, "the government
rested primarily on the information provided by witnesses whose
assistance was obtained by [sic] in the hopes of lenient
treatment." Def.'s Mot. at 4. In short, the witnesses were not
credible. Second, "the Government essentially outsourced this
investigation" to cooperators, declining or neglecting to
capture key pieces of evidence. Id. at 3-4. Therefore, the
testimony of the Special Agents was premised entirely upon the
evidence of the cooperators, and therefore was tainted and
insufficient to provide a basis for conviction. Id.

With respect to the reliability or credibility of
witnesses, these are the province of the jury. "Rule 29(c) does
not provide the trial court with an opportunity to substitute
its own determination of the weight of the evidence and the
reasonable inferences to be drawn for that of the jury." United
States v. Truman, 688 F.3d 129, 139 (2d Cir. 2012) (quoting
United States v. Guadagna, 183 F.3d 122, 129 (2d Cir. 1999)
(internal quotation marks and punctuation omitted).

"[T]he proper place for a challenge to a witness's
credibility is in cross-examination and in subsequent argument
to the jury not in a motion for a judgment of acquittal. Id.
(quoting United States v. Roman, 870 F.2d 65, 71 (2d Cir.1989);
United States v. Truman, 688 F.3d 129, 139 (2d Cir. 2012)
(internal quotation marks omitted). Defendant had opportunity to
attack the credibility of the cooperating witnesses, the
reliance on those witnesses, and any improper incentives (and
indeed, did so). See e.g., Tr. 592 (arguing Montilla's
incentives to falsify her testimony); 605, 578-79 (attacking law
enforcement reliance on the cooperating witnesses). The jury
weighed and decided the credibility of the cooperating
witnesses, finding their credibility sufficient to sustain a
guilty verdict. Moreover, the testimony of the cooperating
witnesses and the Special Agents was corroborated by documentary

10

evidence. The jury also weighed Defendant's competing
explanations and credibility. The Court must defer to the jury's
findings.

Defendant's second argument, that the government declined
to pursue particular types or pieces of evidence, is also
unavailing. Foremost, the sole fact of missing evidence does not
require an acquittal where other evidence is sufficient to prove
the Government's case. As noted above, the Government's evidence
against Defendant was extensive, stemming from variegated
sources and collected in multiple forms. It was corroborated by
multiple witnesses, including law enforcement and co-
conspirators, and scores of documentary exhibits. The fact that
the Government did not prove its case with every theoretical
piece of evidence imaginable does not defeat the sufficiency of
what the Government did provide. Viewing the evidence presented
at trial as a whole in the light most favorable the Government,
and drawing all inferences in favor of the Government, the
evidence presented at trial is sufficient to sustain a
conviction.

Furthermore, this argument was also made at trial. Tr. 110,
409, 581. As with the testimony of the cooperating witnesses,
the jury therefore had the opportunity to determine the weight

11

of the fact of missing evidence, and the Court cannot substitute
its judgment for that of the jury.

**Conclusion**

A rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt based on the evidence set forth at trial. No extraordinary circumstances tend to show a manifest injustice was done by the jury's verdict and no exceptional circumstances are present to justify intrusion on the jury's findings and credibility assessments. Accordingly and for the reasons set forth above, Defendant's motions are denied.

It is so ordered.

**New York, NY**
**January 7 , 2015**

ROBERT W. SWEET
**U.S.D.J.**

13